**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV139-2-V
(3:04CR133-V)**

```
CRAIG O'NEIL (O'NEAL) PYATT,    )
      Petitioner,               )
                                )
            v.                  )         O R D E R
                                )
UNITED STATES OF AMERICA,       )
      Respondent.               )
_____ )
```

**THIS MATTER** is before this Court upon petitioner's "Motion to Vacate, Set Aside, or Correct Sentence" under 28 U.S.C. §2255," filed March 28, 2007. For the reasons stated herein, the petitioner's Motion will be dismissed for its failure to state a claim for relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on May 24, 2004, a two-Count Bill of Indictment was filed, charging the petitioner with having unlawfully possessed a firearm after previously having been convicted of a misdemeanor domestic violence charge, in violation of 18 U.S.C. §922(g), and with having made a false written statement to a licensed firearms dealer in connection with his acquisition of such firearm, in violation of 18 U.S.C. §922(a)(6).

After the petitioner noted his pleas of "not guilty" and

requested a jury trial in this matter, defense counsel sought and obtained several continuances. One such continuance was obtained on the ground that defense counsel had filed a Motion for Appropriate Relief in the District Court of Mecklenburg County, challenging the misdemeanor domestic violence conviction--that is, the conviction which was underlying the petitioner's federal charges.

However, defense counsel's pursuit of the reversal of his underlying State Court conviction was unsuccessful, and so on August 1, 2005 the petitioner's federal trial got underway in this Court. During that trial, the government presented testimony from William Spake, III, the owner of the pawn shop where the petitioner had pawned and attempted to reclaim the subject firearm. Mr. Spake told the jury that the petitioner came to his shop on April 29, 2003 and pawned a .40 caliber Glock pistol with him for a $200.00 loan. For identification, the petitioner presented a North Carolina driver's license with his picture and name on it.

Mr. Spake further testified that on May 29, 2003, the petitioner returned to claim the subject pistol. At that time, the petitioner completed a form required by the Bureau of Alcohol, Tobacco & Firearms ("ATF" hereafter) in order to certify that he was not prohibited from owning and possessing a firearm. In particular, by his answers to the questions on the form, the

petitioner certified that he had not been convicted of a misdemeanor crime of domestic violence; and that he understood that if he made any false statements in connection with his application, he was subject to punishment for a felony offense. After completing that form, the petitioner was advised that the law required him to wait three days for the completion of a national background check by the F.B.I. in order to ensure that he, in fact, was not a prohibited person.

Mr. Spake told the jury that on June 4, 2003, the petitioner returned to his shop to repurchase his firearm and, because no result had come back from the background check, he was allowed to complete the transaction. Mr. Spake also stated that on June 18, 2003, he received the results of the petitioner's background check, which results advised that the petitioner's application to repurchase the gun was denied because he was a prohibited person.

Next, the government presented testimony from Special Agent J.J. Berger of the ATF. Agent Berger testified that after the petitioner's application was denied, he received a referral for investigation from the F.B.I. Agent Berger advised that he opened an investigation of the petitioner during which he obtained a copy of the petitioner's driver's license from the N.C. Department of Motor Vehicles.

Agent Berger next told the jury that on August 7, 2003, he interviewed the petitioner. During that interview, the petition-

er advised that he had originally purchased the firearm in question from a co-worker in 2001; that he recently had pawned the gun to Mr. Spake's shop for $200; that he subsequently paid $250 to retrieve the firearm from the pawn shop; and that he had completed and signed a federal application form in order to re-purchase the gun.

Agent Berger also told the jury that in response to questioning, the petitioner advised that he should have answered "yes" to the question on the form concerning whether he ever had been convicted of a misdemeanor crime of domestic violence; and that the petitioner had first told the Agent that he did not know why he had answered "no" to that question. In fact, Agent Berger testified that during the interview, the petitioner admitted that he had been convicted of assaulting his wife, but somehow thought that such conviction had been "deleted" from his record. Agent Berger also testified that the petitioner had speculated that he failed to correctly answer the critical question because he had been in a hurry at the time that he completed the application form, and had simply failed to pay detailed attention as he should have done.

Last, Agent Berger testified that during the interview, he told the petitioner that because of his domestic violence conviction, he was a prohibited person who could not lawfully possess the subject firearm, and that he (Berger) would have to take

4

possession of the gun.  Agent Berger testified that the petitioner then signed an Abandonment of Property form for the pistol and two other firearms, and told Berger that all three firearms were at his father's home in South Carolina.  However, despite several attempts to take custody of the gun from the petitioner, Agent Berger never was given the pistol.

At the conclusion of these witnesses' testimony, the government introduced the parties' written Stipulation into evidence. By that Stipulation, the parties agreed that the petitioner had been convicted of a charge of assault on a female in 1997, and such conviction had not been expunged; and that the firearm which the petitioner was charged with having unlawfully possessed had traveled in interstate commerce.

For his part, defense counsel then made a Motion to Dismiss the felon-in-possession charge pursuant to Rule 29 of the Federal Rules of Criminal Procedure due to the government's failure to prove that the subject firearm was operable.  However, the Court denied the Motion.

Next, defense counsel announced his plan to make an Opening Statement.  The Court then advised the petitioner concerning his rights to be protected from self incrimination, or to take the stand even against defense counsel's recommendation.  At that point, the petitioner told the Court that he had discussed those matters with his attorney, he understood his rights and, after

5

consulting with counsel, he had decided to testify.

Thereafter, defense counsel made his Opening Statement, and then called the petitioner to the stand. By his testimony, the petitioner admitted that he previously had pled guilty and been convicted for "assaulting a female," that is, his wife; that he had been represented by an attorney during that proceeding; and that such attorney had advised him that there would be "no ramifications" to his entering a guilty plea.

The petitioner also testified that he had kept the pistol in question at his parents' home in South Carolina because he had three young children in his home, but had decided to pawn it at Mr. Spake's shop because he was "in between paychecks" and needed money in order to pay a bill. The petitioner next told the jury that he subsequently went back to the pawn shop to retrieve the pistol, at which time he paid off his debt.

However, the petitioner testified that he was told that he could not retrieve the gun because his background check had not been completed. The petitioner reportedly went back for the pistol on two later occasions, and on that last occasion, he was given the gun and told that "everything was fine the check was fine . . . ."

As to the critical question on the application form, the petitioner told the jury that based upon his understanding, he had not been convicted of a misdemeanor crime of domestic

violence; and he testified that he had not understood that the question also applied to his assault on-a-female conviction. The petitioner further testified that he was a high school graduate, had taken some college level courses in the military, but had no legal training. The petitioner also stated that at the time that he entered his guilty plea, no one had told him that his assault on a female charge was the same as a domestic violence charge; and that no one at the pawn shop had told him that either. Ultimately, the petitioner testified that he did not "knowingly posses the weapon against the law."

On cross-examination, the petitioner denied that he had ever used false Social Security numbers, but could not explain why there were six sets of numbers associated with his name, including one on a military discharge form which the petitioner had signed.

Defense counsel also called the petitioner's mother to testify. According to Mrs. Pyatt, in May 2003, the petitioner kept the firearm in question at her home. Mrs. Pyatt also testified that she and her family received calls concerning the gun from Agent Berger, during which they repeatedly told Berger that he could come and pick up the gun.

At the conclusion of the case, the jury deliberated for about an hour and then found the petitioner guilty of the so-called "felon-in-possession" charge. However, the jury acquitted

the petitioner of the remaining "false statement" charge.

Next, on October 21, 2006, defense counsel filed the "Defendant's Sentencing Memorandum And Request For Variance." By that 12-page document, defense counsel first pointed out that, pursuant to the recent decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the U.S. Sentencing Guidelines recently had been determined to be advisory. Thereafter, counsel argued for a sentence below that which was recommended by the Guidelines.

In particular, defense counsel asked the Court for a variance from the Guidelines on the grounds, <u>inter alia</u>, that: (1) the advisory sentence was "too harsh" and was "greater than necessary" to meet the goals of punishment and deterrence for the petitioner; (2) the petitioner's actual conduct was atypical of the conduct at which the controlling Guideline sentence is aimed; (3) the petitioner was advised by the attorney who had represented him on the State misdemeanor assault charge that such conviction would not result in his loss of the right to carry or possess a firearm, therefore, he lacked the intent to violate federal law; (4) the petitioner had served in the military; (5) the cost of the petitioner's incarceration substantially outweighed any benefit which the community would gain from his imprisonment; and (6) the petitioner's incarceration would be unnecessarily harsh for his family.

On October 26, 2006, the Court conducted a Sentencing

8

Hearing. At that Hearing, the Court heard from counsel for the parties, and from the petitioner. After considering all of the pertinent information, the Court sentenced the petitioner to a term of 18 months imprisonment. Although defense counsel timely gave notice of appeal, the petitioner subsequently withdrew that notice, and instead opted to pursue the instant collateral review.

To that end, on March 28, 2007, the petitioner filed this Motion to Vacate. In his Motion, the petitioner argues that he was subjected to several instances of ineffective assistance of counsel; and that this Court violated his constitutional rights by having failed to give sufficient weight to the sentencing factors set forth in 18 U.S.C. §3553(a) and the case of <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). Notwithstanding his obvious beliefs to the contrary, however, the petitioner is not entitled to any relief on his claims.

## II. **ANALYSIS**

### 1. **This Court is authorized promptly to review and dismiss any §2255 motion which does not contain a claim that entitles the petitioner to relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth

9

therein.  In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has reviewed the petitioner's Motion to Vacate and the pertinent record evidence.  As hereafter explained, such review clearly establishes that the petitioner cannot prevail on either of his two delineated claims.

### A. **The petitioner's claim of sentencing error by the Court is procedurally defaulted**.

Taking them out of order, by his second claim, the petitioner asserts that this Court committed error under <u>Booker</u> when it failed to give "due weight" to certain sentencing factors.  However, the petitioner did not raise this claim on direct review.  In fact, the petitioner concedes that his attorney gave a timely notice of appeal, which appeal would have permitted the petitioner to challenge this and any other matter he desired to raise; and that he withdrew that appeal and chose to pursue the instant collateral review. Such choice by the petitioner was fatal to this claim.

To be sure, in <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999), <u>cert. denied</u>, 120 S.Ct. 1283 (2000), the Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he com-

plains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."  Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Here, the petitioner makes no attempt even to explain his decision not to pursue direct review of this claim.  Consequently, since the Court cannot find any basis for excusing the petitioner's procedural default of this matter, the instant claim of sentencing error must be flatly rejected.

> **B. The petitioner also cannot prevail on his claims that his former trial counsel provided ineffective assistance**.

By his other claim, the petitioner first argues that counsel was ineffective because he engaged in an actual conflict of interest during the course of his representation of the petitioner. According to the petitioner, such conflict is evidenced by the fact that his former trial counsel was under investigation for his client billing practices at the same time that he was representing the petitioner.  This argument, however, is factually baseless.

To prevail on a claim that there was a conflict of interest between himself and his former attorney, the petitioner must show

(1) that his attorney had an actual conflict of interest; and (2) that the conflict of interest adversely affected former counsel's performance. Fullwood v, Lee, 290 F.3d 663, 689 (4th Cir. 2002), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). With respect to the first prong of this test, "[t]o establish an actual conflict of interest, the petitioner must show that his interests diverged with respect to a material, factual or legal issue or to a course of action." Mickens v. Taylor, 227 F.3d 203, 213 (4th Cir. 2000).

In the instant case, the petitioner alleges the existence of an actual conflict of interest on the basis of the investigation; however, he does not set forth any matter over which he and counsel's interests diverged. Thus, the mere fact that former counsel was one of several attorneys who were being investigated for their billing practices–-not their legal performances--by the North Carolina Bar Association and the Federal Bureau of Investigation during a portion of the time that the petitioner's case was pending does not, by itself, establish an actual conflict of interest.

In fact, contrary to the petitioner's specious assertion, the record reflects that the petitioner's attorney performed adequately during the petitioner's proceedings, including filing certain motions in State court to expunge the conviction upon which the subject federal prosecution was based. Defense coun-

sel also filed appropriate pre-trial motions in this Court, he sought a dismissal after the government's presentation, and he effectively cross-examined the adverse witnesses during the trial. The record further shows that counsel's efforts secured an acquittal for one of the petitioner's charges, and they helped to secure a sentence at the lowest point of the advisory range. Therefore, on this record, the petitioner cannot establish either an actual conflict, or that he somehow was harmed by counsel's performance.

As for the petitioner's other allegations against counsel, the Court finds the same to be far too conclusory to provide a basis for granting any relief.

Indeed, with respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen'l. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977),

cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Here, the petitioner argues that counsel was ineffective for allegedly having failed to keep petitioner and his spouse informed of certain otherwise unidentified "developments", to explain such "developments" in order to allow the petitioner to make an informed decision, to fully investigate the case, to disclose to the petitioner "a matter" that was relevant to counsel's continued representation, to argue the Apprendi line of cases, and for having failed to object to the inclusion of one of the petitioner's criminal history points. In addition, the petitioner

14

claims that counsel was ineffective for having failed to object to otherwise unspecified "inaccuracies" in the Pre-Sentence Report, and for having grossly mischaracterized the probable outcome of a trial, counsel supposedly having advised the petitioner that a trial would not result in a "lengthy" sentence.

Notwithstanding the petitioner's laundry list of complaints, however, he fails to set for any specific details to support such matters. That is, the petitioner fails to identify what matters of which counsel failed to inform him and his wife, and he does not even hint at what decisions he was prevented from making. The petitioner also fails to point to what matters would have been discovered had counsel conducted a different investigation, or how those matters might have favorably impacted his case.

Similarly, the petitioner does not even bother to identify which one of his criminal history points he believed counsel should have sought to exclude. Nor does the petitioner bother to identify the "inaccuracies" to which he believes counsel should have objected.

As for his claim that counsel failed to argue the <u>Apprendi</u> line of cases, the petitioner simply is mistaken. Indeed, counsel's Motion for a Variance is replete with references to <u>Booker</u>, an <u>Apprendi</u> progeny, and other similar cases. Likewise, the petitioner's claim that counsel mischaracterized the probable outcome of a conviction after trial is feckless. That is,

15

contrary to the petitioner's obvious opinion, this Court is aware that an 18-month sentence for a firearm-related conviction is <u>not</u> a lengthy term.

Moreover, it goes without saying that the petitioner's arguments that counsel "did not meet . . . important ABA standards relating to defense functions," in the absence of a showing of any prejudice, also cannot provide a basis for a conclusion that counsel was ineffective.

### III. <u>CONCLUSION</u>

The record of this matter reflects that the petitioner is not entitled to any relief on his claims against counsel; and that his claim of sentencing error by the Court has been procedurally defaulted. Therefore, the instant Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: July 31, 2007

*[signature]*

Richard L. Voorhees
United States District Judge